We will call the next case for argument. Cigar Association of America v. City of Philadelphia, number 20-3519. And you can take your time setting up. We're all on the clock, so. Thank you. Most of the record documents here. OK. May it please the court, my name is Kelly Diffily. I represent the appellants, the city of Loyola. Your voice up, please. I represent the appellants, the city of Philadelphia, and the health commissioner in this matter. With the court's permission, I'd like three minutes for rebuttal. That'll be good. And also with the court's permission, I plan to focus my argument on the section 301 preemption claim. If time permits, I will discuss irreparable harm and the Act 42. Well, we would like you to address irreparable harm. OK. So if you can fit that in, that would be appreciated. Absolutely, I will make time for that, your honor. So the primary question before this court, of course, is whether section 301 preempts the city's flavored tobacco ordinance. The district court's holding that it does is erroneous for two independent and alternative reasons. First, even if the court was correct in broadly reading section 301's preemptive scope as preempting all matters concerning youth access to tobacco, our ordinance- Before you get too deeply into this, your brief mentioned there's a pending case in the Court of Common Pleas here in Philadelphia where plaintiffs are challenging a different ordinance but the same preemption statutes. Can you give us an update on that? Sure. The trial court in that matter also granted a preliminary injunction in joining the vaping ordinance, largely relying upon Judge Prater's decision here. The city has appealed that as well, so it's in commonwealth court and we're currently briefing the matter. The appellant's brief is due within a couple of weeks. Well, I mean, because it occurs to me that maybe the Pullman abstention would apply here. The state courts are dealing with this. I mean, does it really make sense for us to delve into this where this is working its way through the state courts? Right, I mean, I think that case will work its way through the state courts. It does concern a different ordinance, so there are some small differences between the two courts. I think your honors would be waiting quite some time to have a decision by the commonwealth court and potentially the Supreme Court, but ultimately we leave it to the court's deference if that's the way you'd like to go. Well, I hope you'll keep us informed as to what happens if something does happen before we decide. Of course, your honor. OK, thank you. OK, you can proceed. So I was saying that the district court's holding was wrong for two reasons. First, even using their reading of the preemptive scope, the city's ordinance is not preempted. But secondly, the plain language of section 301 and 6305 clearly support the city's narrow reading of the preemptive scope. Can you back up? Even if the district court's interpretation of the scope is correct, then what? Then the city's ordinance is not preempted. And the reason the city's ordinance is not preempted is because the city's ordinance does not regulate minors in any way. It literally, on the face of its operative languages, regulates where it does one thing. It regulates where adults and which stores. Is there not language specifically directed at preventing minors from getting these types of products in the city ordinance? Not in the operative text of the ordinance. Plaintiffs in their briefs suggest they are citing the plain text of the ordinance, but they are not. What they are citing to are the whereas clauses. All right, but aren't the whereas clauses indicative of the purpose of the ordinance? They are indicative of the purpose of the statute. And the city does not dispute that trying to deter youth access was one of the motivations or purposes of the statute. But for the purposes of express preemption, we need to look at what the ordinance does, not what its purpose is. There is no preemption of purpose doctrine. When we're talking about express preemption, we look at what the express preemption provision preempts, and then we look at the operative language of the ordinance to see if it falls within that preemptive scope. I mean, I'm just sort of echoing Judge Pratt. Isn't it a little broader? The question is whether it concerns the subject matter, not just lining up specific operative provisions to see whether they exactly match up. Yes, Your Honor. And I think that the reading of what subject matter means, the reading of that with the most fidelity to the plain language is literally to say it regulates the subjects that 6305 addresses. I think the problem with the plaintiff's and the district court's analysis of trying to feel like there was a need to discern some sort of thematic reading is that necessarily goes beyond the plain language of 301 and 6305. By the very nature of trying to infer what this common theme is that ties all those sections together, you're going beyond the plain language of the statute and getting to a place where you're using inference, and you're trying to infer what the General Assembly was intending in terms of tying those things together. But don't the whereas's help us understand that? I don't think the whereas clauses, because the whereas clauses are in the Philadelphia ordinance. But you're talking about inferences. And if I'm inferring, then I think I can consider relative sources of information, which would include a whereas clause. I understood, Your Honor. And again, with respect to the Philadelphia ordinance, we don't dispute that one of the purposes, possibly the main purpose of the ordinance, was to deter youth access. Although, I think the record firmly supports that there were other motivations reducing access for young adults, trying to keep these pernicious products out of the neighborhoods where they're targeted. African-American neighborhoods, poor neighborhoods, that's where these products are marketed. So I don't think there was one exclusive purpose. But I think with respect to the inference point, what I was trying to make clear is there's literally no direction in either 6305 or Section 301 to look for a theme. It tells us to look at the subject matter. The subject of 6305 are the things that the discrete actions it addresses. Those five things. Those five things. And when you go beyond that, when you then look for a theme, some subject matter, what ties all these things together, you're necessarily going beyond the plain language. And I think importantly, we could argue all day about what the theme is. It's not like youth access is the only theme we could come up with. And the district court, in its opinion, talked about some other options that it could have come up with. And when you're talking about multiple ways to interpret that, then we're necessarily in the world of ambiguity, in which case the court should have applied the presumption against preemption and looked at the legislative history. It's helpful to think of it in terms of a Venn diagram. So the subject matter of 6305 is in one circle, and the city's ordinance is in another circle. And to the extent they overlap, there's preemption. That is correct, Judge Porter. And I think that whether you use the district court's reading of the preemptive scope or the city's more narrow reading of the preemptive scope, in either instance, the city's ordinance does not fall within what Section 301 preempts. OK. And again, it is largely because when you look at the operative text of what our ordinance does, it tells adults, here's the stores you can buy flavored scars in. Not only does it not regulate the conduct of minors, there was no reason for the city to do that. It's illegal under federal, state, and local law for minors to try to purchase or purchase tobacco already. But we all know that minors get hold of it. We do know that minors, in some instances, get hold of it. And again, city council had that in its mind. But city council didn't have any authority to regulate what youth could do, because it already was illegal with respect to minors buying it. And it was also illegal, under 6305, for retailers to sell it to minors. So the authority that the city had was to say, well, we can regulate adults. We can make these products not so pernicious and available in every single bodega in a way that totally normalizes them and puts them next to candy and makes everyone think that they are basically brownies or Tic Tacs. So city council used its broad police powers and broad home rule authority. I think remember that the city is a home rule authority, which means that the General Assembly has given to it all police powers, except for those specifically that it says you can't do. So that's different than other municipalities in the state which need express authority to enact as to various legislative topics. We have complete police power to enact any and all legislation unless it's specifically prohibited. So I think that's an important backdrop. I had gotten to the idea of ambiguity. I think at best, the plaintiff's and the district court's version of the preemptive scope gets them to ambiguity. Because again, we could argue all day about what the theme is. So if we're going to look at theme, we're at ambiguity. And I think if you're at ambiguity and you look at the legislative history here and the presumption against preemption, I think you just can't get to. So if we get to ambiguity, the principle to apply is presumption against preemption. It is. I mean, it's both that and the legislative history. Legislative history, I will say to your honors, rarely does legislative history so clearly tell us what the preemptive scope or what a statute means. And Senator Mowery, who was the proponent of the amended, at that time, narrowed preemptive language, told us all what the preemptive scope of Section 301 was. And he didn't just say it once. He said it three times in the course of his comments on the matter. He said that the preemptive scope is, quote, the areas that are specifically addressed by the bill. He said that three times. There's no question that he was saying, it's not this broad preemption that's going to prevent municipalities from doing anything. It's only the specific subjects that are covered by the bill. Could you turn to irreparable harm? Certainly, your honor. So I think where I would start irreparable harm would be just to say that we agree with the district court and the plaintiffs that economic harm that is unrecoverable because of immunity can constitute irreparable harm. I'm sorry, economic harm can constitute irreparable harm. But the key here is that it's only where it's substantial. And I think here, the district court. Well, doesn't some of our case law talk about whether the plaintiff's business is in jeopardy? And I don't think there's any allegation about that. Sure, your honor. I think that if a business were in jeopardy, that would be perhaps a separate basis to find irreparable harm. I think here, the only harm alleged here is economic harm. So normally, economic harm is not a basis for irreparable harm because it's recoverable at the end of the case via damages. The rub here is that because immunity is in play, if the plaintiffs lost some significant amount of revenue while the ordinance was in place, the city is immune, so they couldn't seek those damages later. But again, so if we're going to say irreparable economic harm can constitute irreparable harm, but the court's case law is quite clear. It's not just, you can't just say I'm going to lose $2. You have to establish with evidence that you're going to suffer substantial harm. And I think that's what plaintiffs fail to do. Let's say the plaintiff's export was off by 50%. Yes. 80%. Is there still a substantial risk of irreparable harm? I think the problem here is that plaintiff's evidence was so deficient that it didn't prove where at all it fell on that spectrum. And I think you don't need to prove with exactitude as to how much money you're going to lose. Right. That's what I'm getting at. But what if he was 80% wrong and 20% correct? They still have a seven-figure damages claim, right? Right. But I think the court, again, the city pointed out all these problems with their evidence, their harm evidence. And the court agreed that the magnitude was unknown, that it couldn't decide. So I think that where the evidence is so bad that you have no idea where on the spectrum they're going to fall, whether they're going to lose $2 or $10 million. And indeed, also the court said that likely it was probably far lower. I think they just didn't put on the quality of evidence that would have established that the harm were substantial. How do we know where to draw the line? What if the district courts persuaded that? And of course, it's assessment of the evidence is entitled to clear error review. What if their assessment is, I don't know if it's $70 million. I don't even know if it's $7 million, but it's a million. It's $500,000. It's $100,000. Is there some point at which the irreparable harm isn't substantial? I think the answer is yes. And obviously, the district court has a lot of discretion on a preliminary injunction to make that determination. We have to have an expert witness tell us that? Or can we do a seat-of-the-pants estimate of what the harm might be? I mean, I think plaintiffs have to put on evidence. I don't think the court can just discern out of the air that substantial economic harm is at issue. That's what plaintiffs have to prove. And I think I want to emphasize to the court here that the district court, after acknowledging all the problems with plaintiff's evidence, the finding on review is that their evidence showed some economic loss. Can we switch gears for a minute on this whole irreparable harm thing? We'll be asking both sides this. So there's the 301 claim. And the district court said there is irreparable harm. But there's also the Act 42 claim, which the district court didn't reach. And the plaintiffs have said in their brief that on that claim, there is the availability of damages and prospective relief and so on. If they've established the preliminary- We'll go 14, 15 on page 43. If they've established all of the elements, let's just assume for the purposes of the question that they have established the preliminary injunction elements, including irreparable harm, on the Act 301, on the 301 claim. But there's this other claim that's not addressed. If that claim would provide for damages, then what do we do with the irreparable harm analysis? And the Act 42 claim there may not have a likelihood of success on the merits. We don't know. I mean, I think with respect to the harm question, if they could get damages under Act 42, then that would defeat their claim of irreparable harm under Act 42. But certainly, the city is not willing to concede here. Does it defeat their claim totally if they're able to get damages on one of their causes of action? It's a tough issue. I mean, I could see where a holding otherwise could actually open up the door for some gamesmanship. Or I've got a bunch of tort claims that could give me damages. But I'm not looking at that. I'm looking at this one, where I can't get damages, and so let's go forward. And in fact, just to be fair, I mean, that is what plaintiffs did here, right? Their complaint alleges constitutional claims, which obviously would have damages. Well, I don't want to accuse them of gamesmanship. Right, but I think it's important to point out that their complaint set forth claims that clearly provided for damages that the city wouldn't have immunity for, because they're Section 1983 claims. And they decided to go forward on their PI motion only on the state law preemption. Well, that's sort of the question. If there's even one claim that has a likelihood of success on the merits, and for which there's irreparable harm, is that enough for a preliminary injunction? You just ignore all the other potential claims that they didn't bring in? Is the plaintiff the master of its own motion the same way it is the master of its complaint? Yeah. I mean, Judge Porter, in our brief, we said no. I mean, our threshold argument on irreparable harm was that the complaint alleged these constitutional claims, and they do have an availability of damages, and that's sufficient, and we can end our inquiry there. The district court opted not to reach those claims, so obviously we set forth alternative arguments. Had been really looking at the Act 42 claim, I think I would have moved to certify it to the Pennsylvania Supreme Court, because that's a kettle of fish that I think they ought to get involved in, and not us. And of course, that can add another year or two to the whole. Would that time delay be a factor we should consider? Yeah, I think if this court sends this matter to state court under Pullman, because of the vaping case or certifying question, certainly that's gonna extend this case by a long time. I think as to the city's position on doing that, we have no objection to whatever option the court chooses. If it thinks, if it's inclined to reach the Act 42 claim, because it decides the Section 301 claim is lacking, we leave it to your discretion to certify it, to send it back to the district court for you to decide it. I mean, it is an issue of law, so obviously both you and the district court could decide the issue. If you think it's more prudent to send it to the district court, that obviously is an option. Okay, thank you, counsel. We'll hear from your adversary. Thank you. Good morning. Morning. May it please the court, my name is John Summers. I represent the Appellees, the Cigar Association of America, and the other entities. It's so good to be here in person. Thank you very much. Good to have you. This case presents very clear, on count one, an entitlement to the preliminary injunction that the district court entered. That preliminary injunction that the court entered was entered because the city of Philadelphia's ordinance prohibiting the sale of flavored cigars and other tobacco products, more than a hundred million cigars a year to adults in the city of Philadelphia. Now, what does the ordinance say? Judge Porter, Judge Roth, you asked a series of questions. The text of the ordinance, in understanding its subject matter, includes the whereas clauses, as well as all the operative sections. That's what the Pennsylvania Supreme Court said in Federer versus Burrough of Dormant, a 1979 Pennsylvania Supreme Court decision that said language in a preamble is operative for interpreting the subject matter of the ordinance. That Pennsylvania Supreme Court decision relied on a Pennsylvania statute guiding the construction of statutes and laws of Pennsylvania, Title I, Section 1924. So there is no question, but that in understanding the scope, excuse me, the subject matter of a provision, you don't engage in literary theory and thematic interpretations. You do what courts do all the time, which is you look at the language and you don't create walls in statutes and say, above the line, there are all kinds of expressions of intent about what this ordinance is about. But because it's prefaced with words like preamble or whereas, we as a court are prohibited from reviewing. That's just not a colorable argument. We are not, Applees, engaging in, and nor was the district court, engaging in exercise of thematic interpretation. We were looking at, as textualists, the actual words. Now, given that the statute, the ordinance is at issue, I could address Judge Shigera's, Pullman abstention wouldn't apply here because the proceeding in that common police court in Philadelphia, it involves a different party, it involves a different ordinance, and frankly, we're not involved in that case. And so we shouldn't be bound by whatever happens in that case. And I would add that to the extent that case has any relevance, right now, we have word from the state court that Judge Prater's interpretation of section 301 is the operative and accurate one. Which takes me to Judge Porter, your geometric or Venn diagram question. The question is, if you look at the scope of the ordinance and what does it cover, and then you look at the scope of what section 6305 is about, is there an overlap? Of course there's an overlap. Section 6305-2, one of the four subsections, expressly provides and prohibits an individual from furnishing, by way of gift or sale, to minors, cigars. That's what section 6305 is about. You're saying, yeah, but our ordinance doesn't cover minors, it's aimed at adults. Well, first of all, what the 6305-2 is, it's about adults. It says adults are prohibited from giving to minors. The ordinance says on its face that it's designed to stop adults from providing the same thing. So it's the same thing. The ordinance says, many young people are able to access tobacco products without directly purchasing them. And the ban on the sale of flavored tobacco products is a complementary effort to reduce the overall availability of flavored tobacco products in the city of Philadelphia. And the legislative history about the ordinance only reinforces that. The city, the city pivots in its discussion of 6305 and tries to say, well, it's not really about the furnishing of tobacco products to minors, yet that defies the exact language in 6503-2. Moreover, they resort to legislative history. You look at the legislative history, it's what one legislator said on the floor. That's not, that doesn't amount to any kind of legislative history. They resort to presumptions, but you only begin to look at presumptions in the face of some difficulty and ambiguity. And there is none. So with respect to likelihood of success on section 301, it's an easy question. It's not a difficult question. And the district court relied exclusively on that. And there's a kind of oxen's razors that lawyers apply when they pursue cases, which is you go for what is simple and straightforward and not complex. That's what section 301 does. Now, with respect to the question, Judge Roth, of certification, we raised the set of Acts 42 issues and the law with respect to certification and you all dealt with that extensively recently in the Amazon, the Oberdorfer case. There are general presumptions that the court is obligated to take hold and to decide issues. And even if they're state court, you do that all the time in diversity. The question is, is it something particularly difficult, particularly unsettled? And here there is nothing unsettled, unresolved, conflicting appellate decisions with respect to section 301. So we're entitled to pursue it, rely on it, proceed on it. We would allow. I think when Judge Roth mentioned certification, it was in connection with the Act 42. Yeah, yes. And original purpose and single subject. Those are naughty. And I was just transitioning to that by saying, we recognize that that presents us a basket of other kinds of issues. And that's why we are pursuing the one thing. Now, I'll- Can you, as Judge Porter, can you pick and choose which of your claims you bring forward in the claim for a preliminary injunction? Without doubt. Here, how is it that we could be constrained? Let's just peel back the onion here. The argument that the city is making is, okay, there's a clear unambiguous path towards preemption. But there's another express statute, which we, the city, says is unconstitutional. So by asserting the defense of unconstitutionality, we're going to disallow you from proceeding on the clear path for you to recover? That makes no sense. What the city did, if anybody, was engaged in some forum shopping and gamemanship. Not us. Remember the context here. 10 years ago, there was an ordinance  trying to go get cigars in the city of Philadelphia. We, the Cigar Association of America, and Holtz and others, filed suit in the Court of Common Pleas, saying that that statute, which is different, was preempted. It was conflict preemption. It wasn't express preemption. We filed that. We won, all the way up to the Pennsylvania Supreme Court. Now, in this case, we went back to the state court on our state claims. Something that is an understandable thing to do. The city removed the case to be in federal court because they wanted a second bite from a different channel. Because maybe they'd fare better in their preemption review in the federal court than the state court on a state court issue. Because there was a federal question, we didn't really have a basis for challenging the removal. So we cannot be, pardon me. The issue that I think that's troubling us on the Act 42 claim is, what if the city's wrong and it's not unconstitutional? Now you have a viable claim that you say in footnote 15 gives you a path to damages. And you included that Act 42 claim in your motion for preliminary injunction. So it's not like it's one of the other four counts in the complaint that you didn't bring into motion. It is in the motion, along with section 301. She didn't reach it, but she could have. We could, what do we do with that? Well, I think to borrow a set of questions from Judge Chigurh's earlier in the day, let's get practical here. This is a motion for preliminary injunction. This was filed ago. Everyone wanted an expedited and rapid resolution. Note on the Act 42 issue, if one peels back and looks at past decisions from the Pennsylvania Supreme Court on the single purpose and the doctrine, even they, in 2015, sidestepped the issues that are most closely related to this one in the Sears versus Wolf case, because it involved the fiscal code. And remember, if you all certify, you may be able to order a lot of people, but when it comes to certification, it's up to the state Supreme Court to decide whether it's gonna accept the certification. And if it avoids it. Well, let's not blur it. I mean, look, preliminary injunction is extraordinary relief. And you know we've got the different factors to consider. And we've got to consider this irreparable harm issue. You advanced several theories and said there's irreparable harm, but you also say there's a way to get damages. How do we jump over that hurdle? Well, one of them is there are multiple bases for the irreparable harm, okay? There is the Morales case in which Justice Scalia outlined the Hobson's choice that a plaintiff like ours may face, in which it has an option of either complying with a preempted ordinance and lose substantial revenues during the pendency of a legal challenge, or violate a preempted ordinance and subject themselves to repeated fines and penalties. And that's what we have here. We have a situation in which the city aggressively have been enforcing this ordinance. 130, excuse me, 105 violation notices according to Commissioner Farley. Swisher, one of the plaintiffs, could potentially lose its tobacco license because that's one of the penalties under this. And so faced with the Hobson's choice, they file and that constitutes sufficient irreparable harm. And the possibility that someday a court may conclude on Act 42 that we actually get this, we are years from any resolution of that issue. And as a practice- He presented an expert witness who has been demonstrated to be sort of weak on his figures. And- Well, so if, I'm sorry. So did you really, you presented what you called evidence of irreparable harm, but can we say you did it and we aren't convinced so it was improper to issue the preliminary injunction? Respectfully, no, Your Honor. And there are two conceptual reasons. First of all, as Judge Porter's questions revealed, there was an expert, the only expert, the only evidence from an expert was $70 million of industry-wide relief. And if the number is half, that's a huge and serious problem. But there was also the declaration of the Representative Swisher who said that it would lose cigar sales and it was about $2.9 million. And it represented 57% of its sales into the city of Philadelphia. So there's ample financial evidence and the rule of 50%. Cut it in half, is it still a lot? Sure, it's a lot. There's another element to the irreparable harm though, which is separate and apart just from this economic harm. And that is the city of Philadelphia is violating the law. It's violating not one law, it's violating the Constitution by ignoring the preemption provision of the Constitution. And it's ignoring statutes that say, you, the city of Philadelphia, have to respect what the General Assembly says. You can't pass preempted laws. That's irreparable harm. It's irreparable harm per se under state law for all of the cases that we cited. And this court in reviewing a diversity claim can look to state law to define the element of what constitutes irreparable harm. Is the remedy you're seeking in the Section 301 claim identical to the remedy you're seeking in the Act 42 claim? That if you prevail on the Act 42 claim, you'll get. We sought injunctive relief and damages, and I would need to reflect further on it to be precise. It seems to me in both instances, we've got an ordinance that's harming us in this case. We're being harmed in the same way, and we're being injured in the same way. So it seems that there's a possibility, if you prevail, if we accept all of your arguments, you get both injunctive relief and damages. No, we wouldn't get damages. You haven't been damaged yet? Because the injunction's in place. Well, for now, but there was a time when it wasn't in place, right? That's not a position, no. We don't have that as a situation, so no. You don't have past damages, and at the same time, seeking prospective relief. Correct, yeah, correct. I think I've addressed the range of issues that the panel has addressed. I'm struck listening here this morning that it's preemption morning in the psych work room, but I'm struck by how markedly different the cases are. Although I didn't read those briefs, that case involved nuanced and more complicated issues about federal versus state preemption. None is present here. What's unusual is that the city has brought you in and said it wants you to review a state law that is clear and unambiguous in providing for the preemption of the ordinance, all in what's really round two of something that happened a decade ago, where there has been the city of Philadelphia's persistent effort to over-regulate the businesses in Philadelphia. And what we have here is a state and important- Well, I think they view it different. I think they're trying to vindicate a real health concern. Adequately regulate is what they would say. Well, they would say adequately, but respectfully, the state has said when it comes to regulating, putting cigars and other tobacco products in the hands of kids, we're doing it. The Commonwealth has its laws, and that's an understandable policy. And what it's saying is, by virtue of a preemption provision, we don't want to have yet another layer of laws. We want to have one set of laws. That's a totally understandable position for a state to take, and it's express and clear in the statutes that that's precisely what they're doing. Thank you, counsel. We'll hear rebuttal. Incidentally, if one or both of you could send us whatever the Court of Common Pleas decided, I'm sure we'd be interested in what they had to say on the topic. Your Honor, I believe we submitted a- Oh, you have that? Oh, I'm sorry. A 28-J letter. Okay. I think the only thing that's new is that there was an appeal filed to the Commonwealth Court. Okay. And that's all. All right, well, I hope you'll provide us whatever else is decided, you know? Okay, thank you. Yeah, just on that matter, briefs are due for the appellant in a couple weeks, so, you know, I think we would be looking at, you know, probably six months. Okay, all right. We would get a decision from the Commonwealth Court. It might get heard, the next Commonwealth Court session is September, so I think it may get held. Okay, appellant said a lot, but I want to quickly address a number of things, hopefully quickly. The idea that we're forum shopping is ludicrous. Their complaint set forth constitutional claims. The city always removes cases that raise civil rights claims. The fact that they dropped their constitutional claims on the PI, leaving only the state issues, was their decision. They keep referencing this Holtz decision. Holtz has no application here. It was a conflict preemption case. I think they're trying to, they keep raising it, except that their brief in the analytical section never actually cites to it. I think that's trying to just use it as, they're trying to suggest somehow that that controls here. As to their argument about the whereas clause, and the fader decision about using whereas clauses to interpret it, that is no application here. You can use whereas clauses to interpret ambiguous ordinances. So if you can't tell what the operative text says, you can look to the whereas clauses. But here, we have a perfectly clear ordinance that says exactly, it says exactly what it does. And it's extremely simple, it's two sentences. Adults go to these specialty stores. And you can't use a whereas clause to create ambiguity where no ambiguity exists. And in my reply, I cited the Barash case for that concept, Pennsylvania Supreme Court case. Legislative history, they suggest this idea that because it was a single legislator, that it is not eliminating legislative history. I think the legislative history speaks for itself. It is extremely clear, convincing, and probative here. And there is a slew of both federal and state cases that we cited in our reply at pages nine and 10, which make clear that a single legislative comment by some kind of random legislator on the floor might not have probative force. But surely, sponsors of the bills, and in this case, Senator Mowery, was the chair of the committee that had literally just amended the preemption provision to narrow it. He is the proponent of that amendment and is the one who has authority to speak on it. And finally, as to the idea, perhaps, that per se irreparable harm should apply here because there's a statutory violation. Appellees Council acknowledged that that's the law in Pennsylvania. It is not the law in federal court. Federal court cases are legion. We cited the cases extensively that for the purposes of preliminary injunction motion filed in a federal court, rule 65 applies and the federal rules on what is irreparable harm applies. And I think if your honors look to, there's a number of decisions, starting with the eBay decision of the Supreme Court, this court's decision in TD Bank and Farring Pharmacy, all of which under federal law essentially say we should not be using presumptions and assumptions as to fulfilling the elements of a preliminary injunction, that courts have a duty to exercise their equitable jurisdiction. So courts need to weigh those factors and weigh the equities and decide whether a preliminary injunction is appropriate and relying on a presumption is not an appropriate way to do that. And I think that's 100% clear under federal law. How do you suggest we think about the Act 42 claim because footnote 15 acknowledges  but you say that claim's a loser. So we're mixing and matching the elements now, right? With irreparable harm and likelihood of success on the merits. And you're not going to concede that it's a good claim. Of course, correct, correct. But I mean, I think that's not the test, right? The test for irreparable harm is, you know, if your only losses are economic, that's not irreparable harm if you can recover losses at the end of the case. So whether you're looking at it under the guise of the constitutional claims or the Act 42 claims, they potentially have damages available at the end of the case. But I do, I'm sorry, I do just want to make clear, however, that the city does not concede that they would be entitled to damages under Act 42 because I believe immunity still applies. But if you're right on the Act 42 claim and it's unconstitutional, then they do have one claim that at least the district court has found, they do have irreparable harm. So is that enough? I mean, I think for all the reasons I articulated in my opening argument, I think that the evidence on irreparable harm that they produced was insufficient. And the finding the district court made that this court is now reviewing is that there was some irreparable harm. Some irreparable harm is not enough. It has to be substantial harm. I understand all of that. We're trying to think through the coexistence in this motion of these two claims, one of which was unaddressed. Right. I mean, I think Your Honor's idea that if they're asserting a claim where potential damages are available that pursuant to this court's case law, that may well mean that they haven't, that they haven't established irreparable harm solely for that reason. And I mean, I think we essentially argued that, but under the guise of the constitutional provision. And I guess we could litigate if they win that claim whether they actually do get damages. All right, thank you, counsel. Thank you, Your Honor. We'd like to thank both counsel for their really terrific briefing and oral argument today.